## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,** | **CRIMINAL ACTION** |
| **v.** | |
| **LANCE RYAN,**<br>**Defendant.** | **NO. 23-029-3** |

### MEMORANDUM OPINION

Defendant Lance Ryan is charged with attempting, committing, aiding and abetting, and conspiring to commit robberies that interfere with interstate commerce, in violation of 18 U.S.C. §§ 2 and 1951(a), as well as using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Ryan now moves to suppress evidence gathered pursuant to three search warrants—two federal and one state—and one arrest warrant, arguing that these warrants were not supported by probable cause. For the reasons set forth below, Ryan's Motion will be denied.[1]

### I.    FACTUAL BACKGROUND

Ryan faces criminal charges for his suspected participation in a number of armed robberies committed and attempted in Philadelphia throughout 2022. The event that led to the

---

[1] Ryan requests that the Court hold an evidentiary hearing with regard to his Motion to Suppress. "A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010) (citing *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996)).

Ryan's brief is not "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that . . . [he] has presented a colorable constitutional claim" of Fourth Amendment violations. *Id.* Further, the facts set forth therein amount to little more than word-for-word regurgitations of facts laid out in warrants and indictments prepared by the Government, so there are no "disputed issues of material fact" at play. *Id.* For these reasons, it would not be necessary or fruitful to hold an evidentiary hearing on this Motion.

arrest of Ryan and his codefendants was the October 4, 2022, armed robbery of a Dollar General store located at 6000 North Broad Street in Philadelphia. Surveillance video from that day depicts three men entering the store, one of whom was armed with a firearm. According to testimony from the cashier, the armed man approached the cash register, pointed a black handgun at the cashier, and demanded money from the registers. One of the other men walked behind the counter and removed about $1,600 in cash from the registers, while the third man attempted to restrict the movement of two customers who were present in the store at the time. The three men then fled the store.

Hidden among the cash stolen from the registers was a GPS tracking device that, upon its removal from the store, sent an alert to a private security firm. That firm then contacted the Philadelphia Police Department ("PPD"), who followed the GPS signal to the 6500 block of Ogontz Avenue. On that block, police located codefendant Dajaun Dantzler, who was carrying a partially-opened backpack visibly containing a pile of loose cash. Police searched Dantzler's bag and found the GPS tracking device inadvertently stolen from the Dollar General, as well as a handgun, the appearance of which was consistent with a description of the robbery weapon given by the cashier. The cashier was later transported to the scene, where they identified Dantzler as the person who threatened them with the weapon during the robbery.

At the time Danztler was stopped, additional responding officers located a man running down a back alley connected to the same block of Ogontz Avenue. The man, codefendant Rodney Whiting, was stopped by police and eventually arrested in connection with the robbery. Following his arrest, Whiting's cell phone was seized, and the PPD obtained a state search warrant to perform an extraction of the phone's contents. Upon performing that extraction, police found three phone calls and one text message (asking "what's ya location[?]") sent to

2

Whiting in the minutes after the robbery from a number that was determined to belong to Ryan. Following further investigation by detectives from the PPD and Special Agents from the Federal Bureau of Investigation ("FBI"), Ryan was charged on January 3, 2023, for his alleged involvement in the Dollar General robbery.

## II.    LEGAL STANDARDS

To protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," the Fourth Amendment provides that "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The "principal means" for enforcing this right is "the judicially created exclusionary rule," which allows for the suppression of evidence gathered in violation of the Fourth Amendment. *United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982).  The party who files a motion to suppress evidence bears the burden of proving the Fourth Amendment violation.  *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citations omitted).

## III.    DISCUSSION

Ryan seeks suppression of evidence obtained after the execution of three search warrants and one arrest warrant issued by federal Magistrate Judges and one state judge during the course of the investigation into the robbery described above.  Each of these warrants, he argues, is constitutionally infirm because the affidavits supporting them failed to establish probable cause that he had committed a crime or that evidence of a crime would be found in the places to be searched.  The sufficiency of each warrant will be evaluated chronologically by their time of issuance.

### A.  October 23, 2022, Search Warrant for 6845 Ogontz Avenue

In late October of 2022, Detective John Leinmiller of the Philadelphia Police Department sought a warrant from a Pennsylvania state court authorizing the search of 6845 Ogontz Avenue in Philadelphia, the home shared by Rodney Whiting and Dajaun Dantzler, in connection with their suspected involvement in the Dollar General robbery.  The warrant was issued on October 23, 2022, and a search of the house was conducted the same day.  Detectives seized from the home several rounds of 9mm ammunition; a pair of New Balance sneakers; mail belonging to Dantzler; and, an ID belonging to Whiting.

Ryan argues that this evidence, insofar as the Government seeks to use any of it against him, must be suppressed because the affidavit supporting the search warrant "lacks probable cause to [suggest] that Mr. Ryan committed any crime."  Probable cause aside, Ryan's argument fails out of the gate because he does not even attempt to establish that he had a constitutionally protected expectation of privacy in the home at 6845 Ogontz Avenue, where he did not live.

It is hornbook law that the Fourth Amendment only protects an individual against unreasonable searches of areas in which that individual holds a reasonable expectation of privacy.  *See, e.g., Steagald v. United States*, 451 U.S. 204, 219 (1981) ("[T]he Fourth Amendment . . . cannot bestow vicarious protection on those who do not have a reasonable expectation of privacy in the place to be searched.").  And although "a person *can* have a legally sufficient [expectation of privacy] in a place other than his own home," *Rakas*, 439 U.S. at 142 (emphasis added), the burden is on the person seeking suppression to establish such an interest. *United States v. Stearn*, 597 F.3d 540, 544 (3d Cir. 2010) ("[T]he proponent of a motion to suppress 'bears the burden of proving not only that the search . . . was illegal, but also that he had a legitimate expectation of privacy in [the place searched.]'" (quoting, with alterations, *Rawlings*

*v. Kentucky*, 448 U.S. 98, 104 (1980))).

Here, Ryan proffers no evidence suggesting that he ever lived at, or even visited, the home at 6845 Ogontz Avenue, nor does he make any attempt whatever to demonstrate that he had a reasonable expectation of privacy in the home.  Accordingly, the Motion will be denied as it relates to evidence seized therefrom.

### B.  November 18, 2022, Warrant to Obtain Cellular Data from T-Mobile

On November 18, 2022, Magistrate Judge Strawbridge of the Eastern District of Pennsylvania authorized a search warrant to obtain cell-site data, pen register and trap and trace data, and GPS "ping" data, and to use a cell-site simulator, on a phone number believed by law enforcement to belong to Ryan.  Investigators executed the warrant and used the data collected to trace Ryan's location to Baltimore, Maryland, where he was later arrested.  Ryan argues that this warrant was not supported by probable cause because the supporting affidavit did not suggest that he had been "involved in any criminality."

In reviewing a Magistrate Judge's finding of probable cause, a District Court's "role is limited to ensuring that [the] magistrate had a 'substantial basis' for concluding that the affidavit supporting the warrant established probable cause."  *United States v. Miknevich*, 638 F.3d 178, 181 (3d Cir. 2011) (quoting *United States v. Jones*, 994 F.2d 1051, 1054 (3d Cir. 1993)).  A reviewing court must confine itself "to the facts that were before the magistrate judge, *i.e.*, the affidavit, and [must] not consider information from other portions of the record."  *Jones*, 994 F.2d at 1055.  This standard is a deferential one; "if a substantial basis exists to support the magistrate's probable cause finding," then the finding must be sustained, "even if a 'different magistrate judge might have found the affidavit insufficient to support a warrant.'"  *Miknevich*, 638 F.3d at 182 (quoting *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993)).

Probable cause has been defined in myriad ways, but "'[t]he substance of all the definitions is a reasonable ground for belief in guilt.'" *Carroll v. United States*, 267 U.S. 132, 161 (1925) (quoting *McCarthy v. De Armit*, 99 Pa. 63, 69 (Pa. 1881)).  In the context of a search warrant, probable cause exits where, considering the totality of circumstances, "there is a fair probability that contraband or evidence of a crime will be found in [the] particular place" to be searched.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Similarly, for an arrest warrant, the question is whether there is a "'fair probability' that the person" to be arrested "committed the crime at issue."  *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).  "[P]robable cause is a fluid concept" requiring "the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules."  *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006) (citing *Gates*, 462 U.S. at 232).  As such, "the supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner" when evaluating whether a magistrate had a substantial basis to find probable cause and issue the warrant.  *Miknevich*, 638 F.3d at 182 (citing *United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997)).

With these standards in mind, a review of FBI Special Agent Benjamin Paris' affidavit demonstrates that the issuing Magistrate Judge had a substantial basis to find probable cause that Ryan had committed one or more of the crimes alleged, contrary to Ryan's arguments otherwise. As the affidavit explained, Ryan was suspected of having committed at least two crimes, including: (1) a May 25, 2022, shooting on the 1200 block of West Lycoming Street in Philadelphia; and, (2) fleeing the jurisdiction to evade prosecution, in violation of 18 U.S.C. § 1073.

With regard to the shooting in May, the affidavit described that incident as involving a

complainant who reported that they had been in a verbal altercation with a man, who fired two gunshots at them before fleeing.  A witness to the shooting identified the shooter as Ryan, and during a later interview with PPD detectives, another witness positively identified Ryan as the man who shot the complainant.  From the scene, PPD officers recovered a spent shell casing from a 9mm cartridge and a fired projectile.

The affidavit further explained that, on November 18, 2022, officers from the PPD attempted to execute an arrest warrant at Ryan's last known address in Philadelphia, but he was not present at the home.  Occupants of the home, including Ryan's former girlfriend, told police that Ryan had been at the home the day before, but that they had asked him to leave after surveillance footage from a robbery and assault in South Philadelphia was aired on local television news programs which appeared to show Ryan as the assailant.  The former girlfriend provided the police with Ryan's cell phone number and informed them that he had recently contacted her to share that "he was in Baltimore, Maryland, and avoiding apprehension" due to the news coverage.  The phone number provided to police on November 17 was the same number as the one whose data the warrant sought to retrieve from T-Mobile.

Considering the above, Ryan's argument that the affidavit contains no evidence that he was "involved in any criminality" rings hollow.  On the contrary, the affidavit sets forth facts suggesting that he had been involved in at least two distinct crimes.  First, eyewitness testimony named Ryan as the assailant in the May 25, 2022, shooting.  *See Pinkney v. Meadville*, 95 F.4th 743, 749 (3d Cir. 2024) (explaining that eyewitness identification "satisfies probable cause unless it is unreliable or undermined by exculpatory evidence").  Second, when police attempted to arrest Ryan at his home in November of 2022, his housemates told police that they had asked him to leave the residence because his face was on the news in connection with a robbery and

assault in South Philadelphia.  This evidence, coupled with his former girlfriend's statement that

he had told her he was in Baltimore evading arrest, indicated he had fled Philadelphia to evade

prosecution for that crime.  *See, e.g., United States v. Baley*, 505 F. Supp. 3d 481, 498 (E.D. Pa.

2020) ("Incriminating statements by defendants can factor into probable cause determinations.").

The evidence set forth in the affidavit was sufficient to establish a substantial basis for

finding probable cause that Ryan had committed two of "the crime[s] at issue."  *Wilson*, 212

F.3d at 789.  And because a finding of probable cause that a defendant committed at least one of

the crimes alleged in an arrest warrant is sufficient to justify the legality of the warrant, *see*

*Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) ("Probable cause need only exist

as to any offense that could be charged under the circumstances."), the warrant to collect cellular

data from T-Mobile did not violate Ryan's Fourth Amendment rights.  Accordingly, his Motion

will be denied with respect to that warrant.

### C.  January 3, 2023, Federal Arrest Warrant

On January 3, 2023, Magistrate Judge Hey of the Eastern District of Pennsylvania

authorized an arrest warrant for Ryan, Dantzler, and Whiting for their suspected involvement in

the October 4, 2022, robbery of the Dollar General store.  A federal criminal Complaint charging

the three for their involvement was filed on the same day.  Ryan was already in local custody in

connection with other alleged crimes, and he was transferred to federal custody on January 9,

2023.  Ryan argues that FBI Special Agent Andrew Allaire's affidavit submitted in support of

the January 3 arrest warrant "lacked probable cause" to suggest that he was involved in the

robbery.  However, a review of the affidavit shows that the issuing Magistrate Judge had a

substantial basis for concluding that there was probable cause that Ryan had committed the crime

charged.

The affidavit set forth three pieces of evidence connecting Ryan to the Dollar General robbery. First, the affidavit contained a still image from surveillance footage of the robbery depicting one of the perpetrators wearing a pair of distinctive jeans, and explained, with photographic evidence, how a matching pair of jeans were recovered from Ryan's possessions when he was arrested in Baltimore. Second, the affidavit described how, after Whiting was arrested in the wake of the robbery, local police executed a warrant to search his cell phone and found that he had received three missed calls and one text message (asking "what's ya location[?]") from Ryan's phone number in the minutes after the robbery. Finally, the affidavit explained that the 9mm shell casing collected by PPD officers from the scene of the May 25, 2022, shooting that Ryan allegedly committed was a ballistic match to the handgun seized from Dantzler shortly after the Dollar General robbery, meaning that the gun recovered from Dantzler was the same weapon used in the May shooting.

Collectively, these three pieces of evidence are sufficient to establish a substantial basis for finding probable cause that Ryan had committed the Dollar General robbery on October 4, 2022. *See Miknevich*, 638 F.3d at 181. Accordingly, the January 3, 2023, arrest warrant did not violate Ryan's Fourth Amendment rights, and his Motion will be denied with respect to that warrant.

### D. January 4, 2023, Warrant to Search Ryan's Phone

On January 4, 2023, Magistrate Judge Hey issued a warrant authorizing the search of Ryan's cell phone, which was seized incident to his arrest in Baltimore. Ryan argues that any evidence captured from his phone must be suppressed because there was no probable cause to believe that he was involved in the October 4, 2022, robbery of the Dollar General store. However, a review of the affidavit submitted by Agent Allaire in support of the warrant shows

otherwise.  The affidavit set forth the same facts recounted above regarding Ryan's distinctive jeans, the calls and text message sent from Ryan's phone just after the robbery, and the ballistic match between the gun recovered from Dantzler and a shell casing from a cartridge suspected to have been fired by Ryan.  These facts belie Ryan's argument that "[t]here is no evidence" that he was involved in the October 4, 2022, robbery.  On the contrary, this evidence establishes a substantial basis upon which the issuing Magistrate Judge determined that probable cause existed to search Ryan's phone for evidence related to that robbery.  *See Miknevich*, 638 F.3d at 181. Accordingly, Ryan's Motion will be denied with respect to the January 4, 2023, warrant authorizing that search.

   An appropriate order follows.


                          **BY THE COURT:**


                          **S/ WENDY BEETLESTONE**

                          _____
                          **WENDY BEETLESTONE, J.**


10